United States District Court
Middle District of Florida
Jacksonville Division

**WAYNE LEE BUSBY,**

    *Plaintiff,*

v.                                                                     **NO. 3:14-cv-544-J-34PDB**

**COMMISSIONER OF SOCIAL SECURITY,**

    *Defendant.*

---

## Report & Recommendation

Wayne Lee Busby appeals the Social Security Administration's denial of his claims for disability-insurance and supplemental-security-income benefits. Doc. 1. The parties have briefed their respective positions. Docs. 14, 17. He seeks reversal; the Commissioner, affirmance. Concluding the ALJ failed to apply the correct legal standards, I recommend reversal.

**I.   Issues**

Busby presents two issues: (1) whether the ALJ failed to adequately analyze his cervical-spine and hip conditions and their effect on his residual functional capacity; and (2) whether the ALJ articulated good cause for discounting his treating cardiologist's opinion. Doc. 14 at 1, 19.

**II.   Background**

Busby is 55 and last worked in June 2008. Tr. 43, 45. He has a twelfth-grade education and past experience as a crane operator, automobile distributor, car

checker, forklift operator, laborer, torch cutter, bailer operator, and tractor-trailer driver. Tr. 31, 44. He alleged he had become disabled on January 27, 2011, due to heart, back, neck, and mental-health problems. Tr. 43, 216. The medical record consists of treatment he received in 2011 and 2012, primarily through emergency-room visits. Tr. 275–656. He proceeded through the administrative-review process, failing at each level.

### III. The ALJ's Decision

The Social Security Administration uses a five-step sequential process for deciding if a person is disabled. 20 C.F.R. §§ 404.1520(a); 416.920(a). Under the process, the ALJ asks: (1) is the claimant currently engaged in substantial gainful activity; (2) does he have a severe impairment or combination of impairments; (3) does the impairment meet or equal the severity of any specified impairment in the Listing of Impairments, 20 C.F.R. §§ 404.1520a(c); 416.920a(c); (4) based on a residual-functional-capacity assessment, can he perform any of his past relevant work despite the impairment; and (5) given his residual functional capacity, age, education, and work experience, are there a significant number of jobs in the national economy that he can perform. *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004).

Here, at step two, the ALJ found that Busby has severe impairments of shoulder impingement, coronary artery disease, and hypertension, and a nonsevere impairment of major depressive disorder. Tr. 25–26. The ALJ did not discuss whether his cervical-spine or hip condition was an impairment—severe or otherwise. Tr. 25–26. At step three, the ALJ found his impairments, considered either individually or

in combination, did not meet or medically equal the severity of any specified impairment in the Listing of Impairments. Tr. 26. The ALJ also evaluated four functional areas—known as "paragraph B" criteria—in determining the severity of his mental impairment. Tr. 26. The ALJ found he had mild restrictions in his activities of daily living and social functioning; no limitation in concentration, persistence, or pace; and no period of decompensation of an extended duration. Tr. 26.

After stating he had considered the entire record, the ALJ found Busby has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) such that he can lift no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, except he is further limited to occasionally performing postural activities such as climbing ropes, ladders, and scaffolds; balancing; stooping; kneeling; crouching; and crawling; and must avoid concentrated exposure to hazards such as dangerous moving machinery and unprotected heights. Tr. 27.

The ALJ gave "little weight" to Busby's treating cardiologist's cardiac residual-functional-capacity assessment, "great weight" to the consultative evaluation report of the state-agency psychologist, and found that Busby's testimony was not credible to the extent it was inconsistent with the ALJ's residual-functional-capacity assessment. Tr. 30–31. Based on that assessment and the testimony of the vocational expert, the ALJ determined Busby could not perform his past relevant work but could perform certain light jobs that exist in significant numbers in the national economy;

specifically, marker, cafeteria attendant, and cleaner/housekeeper. Tr. 32. Accordingly, the ALJ found he was not disabled. Tr. 33.

## IV. Standard of Review

A court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standards and whether substantial evidence supports his findings. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is "less than a preponderance"; it is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* The court may not decide facts anew, reweigh evidence, make credibility determinations, or substitute its judgment for the Commissioner's judgment. *Id.* at 1211–12.

## V. Analysis

### A. *The ALJ failed to analyze Busby's cervical-spine and hip conditions.*

Busby argues the ALJ failed to analyze his cervical spine and hip conditions. Doc. 14 at 11–20. He does not argue the ALJ erred at step two in finding he has severe impairments of shoulder impingement, coronary artery disease, and hypertension, and a nonsevere impairment of major depressive disorder, or at step three in finding his impairments, considered either individually or in combination, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 25–26. Rather, he contends the ALJ's analysis of his cervical-spine and hip conditions was insufficient because the ALJ did not consider their impact on either his functioning or his credibility. Doc. 14 at 17, 19.

4

Step two requires an ALJ to find only one severe impairment. 20 C.F.R. §§ 404.1520(a)(3)(ii); 416.920(a)(4)(ii). If he finds at least one severe impairment, he must consider all impairments—both severe and non-severe—in later steps. 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). At step three, an ALJ's statement that he has considered a claimant's combined impairments shows he has. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (1991). At steps four and five, the ALJ "must consider the [claimant's] entire medical condition," *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987), and "consider all of [the claimant's] medically determinable impairments of which [he is] aware" when assessing the residual functional capacity, 20 C.F.R. §§ 404.1545(a)(2); 416.945(a)(2). The ALJ also must consider "all of the available evidence" when evaluating the intensity and persistence of a claimant's alleged symptoms and their effect on the claimant's ability to work. 20 C.F.R. §§ 404.1529(c); 416.929(c).

For each impairment alleged, an ALJ must state "the weight accorded each … and the reasons for his decisions on such evidence." *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986). But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotations omitted). Remand is required if the ALJ "fails to consider properly a claimant's condition despite evidence in the record of the diagnosis." *Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001); *see also*

*Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) ("Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.").

In *Gibson*, for example, the claimant had testified that her disability stemmed from arthritis, limited mobility in her hips and right shoulder, urinary incontinence, hypertension, psoriasis, dizziness, anxiety, nervousness, bronchitis, and sleepiness and forgetfulness from her medications. 779 F.2d at 621. Her medical records included treatment for and diagnoses of psoriasis, nervousness, and anxiety. *Id.* at 622. She argued the ALJ failed to consider each impairment alleged and failed to consider her impairments in combination, and the ALJ's conclusory statement that all impairments were considered in combination was inadequate because the ALJ did not state or explain the weight accorded to each impairment. *Id.* at 622–23. The Eleventh Circuit agreed. *Id.* at 623. Although the ALJ properly "considered and discussed" the impairments of arthritis, iritis, hypertension, pain, bronchitis, and urinary incontinence, he "failed to address [her] claimed impairments of psoriasis, nervousness, anxiety, dizziness, and forgetfulness" or "discuss whether those claimed impairments were sufficiently severe—either singularly or in combination—to create a disability." *Id.* Additionally, the ALJ failed to state or explain the weight accorded to each item of impairment evidence. *Id.* Based on those failures, the Court reversed

6

and remanded for the ALJ to "consider each impairment singularly and in combination to determine disability." *Id.*

In *Vega*, the claimant applied for benefits based on constant neck and back pain, migraine headaches, numbness in her right hand, chronic fatigue syndrome ("CFS"), and Epstein-Barr virus. 265 F.3d at 1217. Her medical records included diagnoses of CFS, complaints of fatigue and sleepiness, and restrictions based on her CFS. *Id.* at 1216–17, 1219. She argued the ALJ failed to make a finding that she suffered from CFS or credit her subjective complaints about fatigue and poor concentration and memory. *Id.* at 1219. The Eleventh Circuit concluded the ALJ "should have acknowledged [the CFS diagnosis] in his evaluation and discussed why he disregarded it." *Id.* at 1219. Because it was "clear … the ALJ did not properly consider the diagnosis of CFS or evaluate the effect the CFS symptoms ha[d] on [the claimant's] ability to work," the Court remanded for consideration of her evidence of CFS. *Id.* at 1220.

In contrast, in *Packer v. Commissioner of Social Security*, the claimant argued the ALJ's residual-functional-capacity assessment was flawed because the ALJ should have found her right-knee-degenerative joint disease and varicose veins were additional severe impairments. 542 F. App'x 890, 892 (11th Cir. 2013). The Eleventh Circuit rejected her argument that any reversible error occurred at step two because the ALJ had found at least one severe impairment. *Id.* at 892. To the extent she argued the ALJ failed to take those additional impairments into consideration at later steps of the sequential-evaluation process, the Court rejected her argument because

7

the ALJ's decision demonstrated a thorough consideration of the record and accounted for all of her limitations. *Id.* Specifically, the ALJ addressed her musculoskeletal condition in general and noted she showed no signs or symptoms of deep vein thrombosis, and she failed to identify evidence demonstrating those impairments caused additional limitations. *Id.* Thus, the Court concluded she had failed to establish the ALJ inadequately considered her right-knee and varicose-vein impairments at any stage of the process. *Id.*

Here, the medical record reflects diagnoses of and treatment for back and neck pain and evaluations for hip pain. A doctor diagnosed Busby with muscle spasm and a chronic back-pain flare up and prescribed pain medication, an anti-inflammatory, and a muscle relaxant. Tr. 276. Another doctor observed moderate tightness and tenderness over his spine and tenderness in the left hip and assessed him with lower back pain and cervicalgia (neck pain),[1] Tr. 282, 357, 597, 610, and prescribed pain medication and injections, Tr. 358, 469, 479, 585, 609. Objective testing showed osteophytosis (bony outgrowth) in the lumbar spine, Tr. 437, 589; mild degenerative changes of the cervical spine, including osteophyte formation, but no spondylolisthesis (slipped vertebra) or acute osseous abnormality, Tr. 590; calcific tendinitis (inflammation) in the left pelvic area, Tr. 440; and stable degenerative changes in the cervical spine with limited range of motion in flexion and extension, Tr. 447. A neurologist evaluated him several times for cervical pain, left-hip pain, and

---

[1] All parenthetical definitions of medical terms are paraphrased from STEDMAN'S MEDICAL DICTIONARY (William R. Hensyl et al. eds., 25th ed. 1990).

chronic lumbar pain and concluded he did not require surgery. Tr. 452–53. The neurologist reviewed the objective testing and concluded it showed early ankylosing spondylitis (inflammation of spine) but no instability. Tr. 452. The neurologist observed normal ambulation, a fluid gait, limited range of motion in his neck, and 5/5 deltoids, biceps, triceps, grips, hip, knee, and ankle flexion/extension. Tr. 452, 454, 456, 459. The neurologist encouraged him to not extend his neck or try extremes of motion. Tr. 452. The neurologist referred him to physical therapy and orthopedics, and Busby reported that physical therapy was helping his neck pain. Tr. 452, 454.

At the hearing, the ALJ asked Busby's attorney to identify his medical impairments established by the record. Tr. 49. His attorney testified that his "principal" impairment is the cervical spine, and that he also suffers from left-hip pain, bilateral shoulder pain, mid-back and low-back pain, a kidney condition, a cardiac condition, anxiety, depression, and low testosterone. Tr. 50. Busby testified he was fired from one of his previous jobs because he "missed too many days because of [his] back problems." Tr. 46. And he also testified he suffers from hip and neck pain, Tr. 52, 58–60, walking and standing aggravate his hip pain, Tr. 65–66, and he has limited range of motion in his neck, Tr. 59.

Although conceding the ALJ's analysis of Busby's cervical-spine and hip conditions is not "detailed," the Commissioner argues the analysis is sufficient to enable the Court to conclude the ALJ considered his entire medical condition. Doc. 17 at 6. I disagree. The record contains diagnoses of and treatment for back and neck pain; observations of tightness and tenderness in Busby's spine and left hip; objective

9

testing that revealed bony outgrowth, degenerative changes, and early ankylosing spondylitis in his spine and inflammation in the left pelvic area; and a recommendation from his neurologist that he not extend his neck or try extremes of motion. Tr. 276, 282, 357, 437, 440, 452, 589, 590, 597, 610. His lawyer described Busby's cervical-spine condition as his "principal" impairment and referenced his hip condition. Although the ALJ acknowledged Busby's "history of back and leg complaints" and referenced the neurologist's conclusion that he did not need surgery, Tr. 28, he never expressly referenced or discussed any cervical-spine or hip condition. His statements that he had considered "all the evidence," "all symptoms," and "all medically determinable impairments" are insufficient to assure the Court that he did in fact consider and reject Busby's cervical-spine and hip conditions because he did not discuss the evidence supporting the cervical-spine and hip conditions, symptoms of those conditions, whether those conditions constituted a medically determinable impairment, or whether those conditions resulted in additional limitations. Nor did he discuss or explicitly reject the neurologist's recommendation that Busby not extend his neck or try extremes of motion. Unlike in *Packer*, his decision does not demonstrate a thorough consideration of the record or that he accounted for all of Busby's limitations. Like in *Gibson* and *Vega*, remand is warranted because he failed to consider additional conditions alleged by Busby or explain why he disregarded those conditions.

The Commissioner contends substantial evidence supports the ALJ's conclusion that Busby is not disabled because the objective testing revealed only mild

findings, physical therapy notes showed he was feeling better, and exams reveal normal gait and station, good muscle tone and strength, and normal posture. Doc. 17 at 7–8. Although the Commissioner points to record evidence that could support a finding on remand that Busby's cervical-spine and hip conditions caused no further limitations in his residual functional capacity, the Court cannot engage in post hoc rationalizations to affirm the ALJ's decision where there is no indication the ALJ himself implicitly or explicitly analyzed those conditions or their impact on Busby's residual functional capacity or credibility. *See FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974) (court may not "accept appellate counsel's post hoc rationalizations for agency actions"). In other words, the Court cannot evaluate whether substantial evidence supports the ALJ's residual-functional-capacity assessment or credibility analysis here because the ALJ failed to analyze Busby's medical condition as a whole. Remand is appropriate for the ALJ to consider those additional impairments and their impact, if any, on Busby's residual functional capacity and credibility.

**B.    *The ALJ should reweigh Busby's treating cardiologist's opinion on remand.***

Busby argues the ALJ superficially analyzed the opinion of Bharat Gummadi, M.D., his treating cardiologist. Doc. 14 at 20–25. He contends the ALJ misconstrued Dr. Gummadi's opinion as a psychiatric opinion but Dr. Gummadi actually opined that stress and overexertion exacerbate his cardiac condition. Doc. 14 at 22–23. He also contends the ALJ ignored Dr. Gummadi's opinion of significant cardiac and orthopedic limitations, and that the opinion was well supported by his cardiac history and the treatment notes. Tr. 24. The Commissioner responds that substantial

11

evidence supports the ALJ's reasons for discounting the opinion. Doc. 17 at 13–17.

If the Court agrees that remand is appropriate for consideration of Busby's cervical-spine and hip conditions and their impact on his residual functional capacity and credibility, I recommend directing the ALJ to reweigh Dr. Gummadi's opinion on remand because his opinion of orthopedic limitations could support Busby's allegations of cervical-spine and hip pain. If that Court disagrees that remand is appropriate on the first issue, however, remand is unnecessary on the treating-physician issue because, as discussed below, the ALJ articulated good cause for discounting Dr. Gummadi's opinion.

An ALJ must evaluate every medical opinion, regardless of its source, and must "state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (quoted); 20 C.F.R. §§ 404.1527(c); 416.927(c). For a treating physician, an ALJ must give considerable weight to his opinion unless he shows good cause for not doing so. *Phillips*, 357 F.3d at 1240. Good cause exists if (1) the evidence did not bolster the treating physician's opinion, (2) the evidence supported a contrary finding, or (3) the treating physician's opinion was conclusory or inconsistent with his own medical records. *Id.* at 1240−41. If an ALJ disregards a treating physician's opinion, he must clearly articulate his reasons. *Id.*

Dr. Gummadi began treating Busby in December 2011 for his angina. Tr. 324, 335. Dr. Gummadi completed a cardiac residual-functional-capacity questionnaire for him a few months later. Tr. 324–28. In the questionnaire, Dr. Gummadi opined that

he had a marked limitation of physical activity, excessive effort or anxiety exacerbated his angina and cardiac symptoms, he is capable of low stress jobs, his symptoms cause frustration and anxiety, emotional factors contribute to the severity of his symptoms, and his cardiac symptoms could frequently interfere with attention and concentration needed to perform even simple work tasks. Tr. 324–25. Dr. Gummadi indicated his impairments are not reasonably consistent with the evaluation, however, because his stress test is normal and he does not have obstructive coronary disease such that his "emotional impairments predominate his symptoms from a cardiac standpoint but he does suffer from orthopedic issues that cause him [increased] pain and suffering." Tr. 325. Dr. Gummadi also opined that his ability to sit, stand, and walk is difficult to assess due to his orthopedic issues, he would probably need to shift positions at will and take unscheduled breaks, he can frequently lift less than 10 pounds due to orthopedic issues, he should avoid all cigarette smoke and concentrated exposure to other environmental pollutants, and overall, he is "doing well" from a cardiac standpoint but "suffers from anxiety and orthopedic issues which will limit his functional ability." Tr. 326–28. The ALJ assigned the questionnaire little weight for two stated reasons: (1) Dr. Gummadi is not a mental-health specialist; and (2) Dr. Gummadi does not provide adequate rationale or cite references to specific medical evidence of record to support the assessed limitations. Tr. 31. The ALJ also took "administrative notice that Dr. Gummadi's overall responses to the cardiac questionnaires are not supportive of a finding of disability." Tr. 31.

The ALJ clearly articulated his reasons for discounting the cardiac residual-functional-capacity questionnaire of Dr. Gummadi, and those reasons constitute good cause. *Phillips*, 357 F.3d at 1240. First, the regulations direct the ALJ to consider the physician's specialty in deciding what weight to assign to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c). Dr. Gummadi's opinion on Busby's mental-health condition was outside his specialization in cardiology and the ALJ's assignment of little weight to his opinion on that basis is consistent with the regulations. Moreover, although Busby characterizes Dr. Gummadi's opinion as assigning cardiac limitations, Dr. Gummadi explained that he was "doing well" from a cardiac standpoint and that his impairments were **not** reasonably consistent with his symptoms and the assigned functional limitations because he had no ischemia on the stress test and no obstructive coronary disease; rather, his "emotional impairments predominate his symptoms from a cardiac standpoint." Tr. 325, 328. In addition, Dr. Gummadi opined that his cardiac impairments would not be expected to last at least 12 months and based most of his functional limitations on orthopedic issues rather than cardiac issues. Tr. 326–27.

Second, Dr. Gummadi did not cite objective evidence to support his opinion of orthopedic and emotional limitations. Tr. 324–28. Although he referenced Busby's angina, as discussed previously, he explained that Busby was doing well from a cardiac standpoint and that Busby had had no ischemia on the stress test and no obstructive coronary disease. Tr. 324–25, 328. He does not cite any support for his opinion that Busby suffers from orthopedic issues and anxiety. Tr. 324–28. Likewise,

14

his treatment records indicate that Busby's physical examination was normal. Tr. 335–37.

Finally, the ALJ took "administrative notice that Dr. Gummadi's overall responses to the cardiac questionnaire are not supportive of a finding of disability." Tr. 31. Presumably, the ALJ is referring to Dr. Gummadi's overall opinion that Busby was "doing well" from a cardiac standpoint. Even assuming the ALJ's statement was erroneous, however, any error was harmless because substantial evidence supports the ALJ's stated reasons for discounting Dr. Gummadi's opinion as discussed above. Namely, Dr. Gummadi's opinion of emotional limitations is undermined because he is a cardiologist rather than a mental-health specialist, and his assessed limitations based on orthopedic issues and anxiety are unsupported by any rationale or reference to medical evidence.

Because the ALJ articulated good cause for discounting Dr. Gummadi's opinion, remand on the treating-physician issue alone is unnecessary. If, however, you agree remand is otherwise appropriate based on the ALJ's failure to analyze Busby's cervical-spine and hip conditions, I recommend directing the ALJ to reweigh Dr. Gummadi's opinion because his opinion of orthopedic limitations could support Busby's allegations of cervical-spine and hip pain.

## VI.  Recommendation

Because the ALJ failed to analyze Busby's cervical spine and hip conditions, evaluating whether substantial evidence supports the ALJ's decision on disability is impossible. Thus, I recommend reversal and issuance of the following decretal:

(1) The Court **reverses** the Commissioner's decision.

(2) The Court **remands** the case to the Commissioner with directions to the ALJ to consider Busby's cervical-spine and hip conditions and their impact, if any, on his residual functional capacity and credibility; to reweigh Dr. Gummadi's opinion; and to take any other necessary action.

(3) The Court directs the Clerk of Court to enter judgment in favor of Busby and close the file.[2]

**Entered** in Jacksonville, Florida on May 27, 2015.

_____
PATRICIA D. BARKSDALE
*United States Magistrate Judge*

c: Counsel of Record

---

[2] A party must file and serve any written objection to any conclusion of law in this report and recommendation (or a motion for an extension of time to do so) within **14 days** of service of this report and recommendation. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 6.02(a). Failure to do so alters the scope of direct and appellate review, including waiver of the right to challenge on appeal any conclusion of law to which a specific objection was not made. *See* Fed. R. Civ. P. 72(b)(3); 11th Cir. R. 3-1; *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).